UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

ARCTIC CAT, INC.,

      Plaintiff,

v.

SABERTOOTH MOTOR GROUP, LLC,
and SABERTOOTH MOTORCYCLES, LLC.

      Defendants.

**MEMORANDUM OF LAW & ORDER**
Civil File No. 13-146 (MJD/JSM)
**FILED UNDER SEAL**

---

Laura L. Myers and Lora Mitchell Friedemann, Fredrikson & Byron, PA, Counsel for Plaintiff.

Ashley M. Bennett Ewald, Daniel J. Ringquist and Dean C. Eyler, Gray Plant Mooty & Bennett, Counsel for Defendant.

---

## I. INTRODUCTION

This matter is before the Court on Plaintiff's Motion to Dismiss, or in the Alternative, for an Adverse Inference Due to Sabertooth's Spoliation of Evidence. [Docket No. 199] The Court heard oral argument on May 15, 2015, in Minneapolis.

1

## II.   BACKGROUND

### A.   Factual Background

#### 1.   The Parties

Plaintiff Arctic Cat ("Arctic Cat") is a Minnesota corporation that designs and manufactures snowmobiles, ATVs, and side-by-side vehicles under the Arctic Cat brand name. ([Docket No. 67] Declaration of John Tranby ("Tranby Decl.") ¶ 2.)

Defendants Sabertooth Motor Group, LLC and Sabertooth Motorcycles, LLC (collectively "Sabertooth") manufacture custom motorcycles that contain a V8 engine. ([Docket No. 53] Defendants' Answer to Second Amended Complaint and Counterclaims ("Answer") ¶ 8, p. 11.) Ben Daniels ("Daniels") is President and owner of Sabertooth. ([Docket No. 221] Declaration of Ben Daniels ("Daniels Decl.") ¶ 1.) Sabertooth owns a production facility in Greer, South Carolina. ([Docket No. 77] Daniels Declaration in Opposition ("Daniels Decl. Opp.") ¶ 13.)

Michelle Saipe ("Saipe") is the Marketing Director of Sabertooth. ([Docket No. 222] Declaration of Michelle Saipe ("Saipe Decl.") ¶ 1.) Daniels and Saipe share a residence in Needham, Massachusetts. ([Docket No. 202] Declaration of Laura Myers ("Myers Decl.") Ex. 9, p. 8; Daniels Decl. ¶ 2.)

2

**2.     The Dispute**

The parties dispute the use and ownership of certain "Wildcat" trademarks. Sabertooth owns trademark registrations for the Wildcat mark and variations of the Wildcat mark. (Answer ¶ 14, pgs. 12-13.) In April 2011, Arctic Cat applied to the United States Patent and Trademark Office (the "USPTO") for use of the Wildcat mark with side-by-sides. ([Docket No. 225] Eyler Decl., Ex. 13.) The USPTO denied Arctic Cat's application due to a likelihood of confusion with Sabertooth's Wildcat registrations. (Id., Ex. 14.) After an unsuccessful appeal, Arctic Cat filed this lawsuit, seeking to cancel Sabertooth's trademark registrations for several reasons, including Sabertooth's alleged unlawful use of the Wildcat mark on non- Environmental Protection Agency ("EPA") certified motorcycles. ([Docket Nos. 1, 50] Complaint and Second Amended Complaint.)

**3.     Discovery Proceedings**

Initially, the parties stipulated that discovery of any kind would conclude on November 1, 2014. ([Docket No. 57] Amended Pretrial Scheduling Order p. 2.) Arctic Cat noticed Sabertooth's Rule 30(b)(6) deposition for June 2014. ([Docket No. 220] Declaration of Dean C. Eyler "Eyler Decl." ¶ 2.) However, Sabertooth requested that the deposition be moved to July 2014 in order to allow

time for Daniels to travel to South Carolina to search for additional responsive documents. (Id.) Arctic Cat agreed to move the deposition to July 2014. (Id.)

Accordingly, in June 2014, Daniels traveled to South Carolina and found responsive documents located on an old computer (the "Old Computer") and in storage. (Eyler Decl., ¶¶ 2-3; Daniels Decl., ¶ 14.) On July 8, 2014, Sabertooth produced documents SMG077600-SMG078383, which included documents that Daniels found on the Old Computer. (Eyler Decl. ¶ 4; Daniels Decl. ¶¶ 14, 15.) In his 30(b)(6) deposition dated July 11, 2014, Daniels referenced the Old Computer:

> Q. And there's no other computer that has Sabertooth records other than your personal laptop?
>
> A. [Saipe] has a few on hers, but other than that, there's one old-- I was able to recover some documents from an old computer that we had back in South Carolina, and I produced those.
>
> Q. When you produced the records you found on the computer in South Carolina, did you print them out, or did you provide them to your counsel in electronic form?
>
> A. I provided them to my counsel in electronic form.

(Eyler Decl., Ex. 4, p. 5.)

While in South Carolina, Daniels found another old computer (the "Other Old Computer," collectively "the Old Computers") but it was not used with

4

Sabertooth's business. (Daniels Decl. ¶ 16.) Daniels brought back the Other Old Computer from South Carolina, but ultimately found that it contained no responsive files. (Id.) When asked whether he had "taken some efforts to make sure that all relevant evidence is maintained," Daniels responded, "Yes. Nothing was deleted . . . . The computers that the company used years ago are long gone." (Eyler Decl., Ex. 4, p. 5.)

On October 31, 2014, Arctic Cat filed a Motion to Extend the Discovery and Expert Deadlines for Forensic Analysis of Defendants' Computers. [Docket No. 94] At the motion hearing, Arctic Cat alleged that Sabertooth had fabricated EPA-related documents in order to defeat Arctic Cat's initial motion for summary judgment. ([Docket No. 142] Hearing Transcript (Hr'g Tr.) at pp. 17, 22.) Arctic Cat also argued that Sabertooth had engaged in other misconduct that threatened the integrity of proceedings. (Id., p. 30.) In denying Arctic Cat's motion to forensically image Sabertooth's computers, Magistrate Judge Mayeron found that Arctic Cat's allegations "[did] not lead to a conclusion that there's a reasonable basis to believe that [] documents were fabricated by Sabertooth once Arctic Cat raised the issue" of non-compliance with EPA regulations. (Hr'g Tr. p. 55.)

Arctic Cat did not appeal the Magistrate Judge's order.

### 4. Disappearance of the Old Computers

On November 30, 2014, Daniels and Saipe returned from a daytrip to find a stepladder propped against the wide-open bathroom window of their Massachusetts home. (Daniels Decl. ¶ 8; Saipe Decl. ¶ 8.) Upon entering the house, they found their television sitting in the middle of the kitchen floor. (Id.) Their laptops were missing, as were approximately ten thumb drives and the Old Computers that Daniels had retrieved from South Carolina. (Id.) No jewelry or other valuables were stolen, even though they were sitting in plain sight. (Id. ¶ 9.)

Daniels called the police. (Myers Decl., Ex. 2.) The responding officer wrote a detailed police report. (Id.) The report indicated that "[n]othing seemed to be out of place or ransacked," and that "[t]here were no visible footprints in the house." (Id., p. 3.) Moreover, "[n]o jewelry had been taken, and there were diamonds and gold in plain sight." (Id.) The officer was unable to locate any points of forced entry into the house. (Id.)

Sabertooth informed Arctic Cat of the alleged theft on February 12, 2015, via an email from Sabertooth's counsel to Arctic Cat's counsel. (Eyler Decl., Ex. 2.) Daniels and Saipe suspected that Arctic Cat or one of its investigators might

be involved with the burglary of their home. (Daniels Decl. ¶ 12; Saipe Decl. ¶ 10.) In the months preceding the theft, Daniels and Saipe had paperwork and trash stolen from their vehicle, and trash stolen from the driveway. (Daniels Decl. ¶ 2, 3; Saipe Decl. ¶ 2, 3.) In October 2014, while Daniels and Saipe were in Minnesota for depositions, someone broke into their garage and stole trash. (Daniels Decl. ¶ 4; Saipe Decl. ¶ 4.) Daniels also testified that he received harassing phone calls during which the callers seemed to be fishing for information related to the instant lawsuit. (Daniels Decl. ¶ 7.) Upon reporting these incidents to the police, the police asked whether he was involved in litigation and noted that litigation is usually the source of the described misconduct. (Daniels Decl. ¶ 6; Saipe Decl., ¶6.) In a letter dated November 14, 2014, Sabertooth's counsel alerted Arctic Cat to the phone calls and theft of trash. (Eyler Decl., Ex. 1.) Arctic Cat denied being involved in the burglary. (Id., Ex. 2.)

  B. **Other Alleged Transgressions**

Arctic Cat alleges that Sabertooth staged the theft in order to destroy damaging evidence. In addition, it provides a list of approximately two-dozen other "transgressions" committed by Sabertooth. Arctic Cat claims that, taken as a whole, these alleged transgressions evidence a pattern of deception throughout

the course of litigation. The Court will discuss these allegations in greater detail, below.

## III. DISCUSSION

Arctic Cat requests that the Court grant its motion and dismiss Sabertooth's counterclaims with prejudice, or in the alternative, issue an adverse inference instruction at trial. For the reasons that follow, the Court will deny Arctic Cat's motion.

### A.   Standard for Imposing Sanctions for Spoliation of Evidence

"A court may, consistent with its inherent authority to manage the judicial process, impose sanctions for the spoliation of evidence." Ngo v. Storlie, Civil No. 03-3376, 2006 U.S. Dist. LEXIS 65633, at *7 (D. Minn. Feb. 28, 2006) (citing Bass v. General Motors Corp., 150 F.3d 842, 851 (8th Cir. 1998)). "Spoliation is the destruction or significant alteration of evidence, or the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." Ewald v. Royal Norwegian Embassy, Case No. 11-cv-2116, 2014 U.S. Dist. LEXIS 46787, at *42 (D. Minn. Mar. 7, 2014) (quotation marks and citation omitted).

In deciding whether to impose sanctions for spoliation of evidence, a court must first determine when the duty to preserve evidence was triggered. Id. at

*43 (citation omitted). "The obligation to preserve evidence begins when a party knows or should have known that the evidence is relevant to future or current litigation." E*Trade Sec. LLC v. Deutsche Bank AG, 230 F.R.D. 582, 588 (D. Minn. 2005) (citation omitted).

"When a court has determined that a party had a duty to preserve evidence two factors must be shown to make an imposition of spoliation sanctions appropriate." ADS Holdings, Inc. v. Fed. Ins. Co., Civil No. 06-3715, 2008 U.S. Dist. LEXIS 122758, at *12 (D. Minn. Mar. 28, 2008). "[A] court must find that (1) the nonmoving party intentionally destroyed evidence with a desire to suppress the truth, and (2) the moving party was prejudiced." Ewald, 2014 U.S. Dist. LEXIS 46787, at *44 (citing Hallmark Cards, Inc. v. Murley, 703 F.3d 456, 460 (8th Cir. 2013) (adverse inference instruction is warranted when a court finds intentional destruction of evidence indicating a desire to suppress the truth and prejudice)).

"A court may rely upon inferences to find requisite intent on behalf of the spoliator to destroy the evidence and suppress the truth." ADS Holdings, Inc., 2008 U.S. Dist. LEXIS 122758, at *12 (citing Morris v. Union Pac. R.R., 373 F.3d 896, 902 (8th Cir. 2004)). "Intent is rarely proved by direct evidence, and a

district court has substantial leeway to determine intent through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." Morris, 373 F.3d at 901.

"When a litigant's conduct abuses the judicial process, the Supreme Court has recognized dismissal of a lawsuit to be a remedy within the inherent power of the court." Pope v. Fed. Exp. Corp., 974 F.2d 982, 984 (8th Cir. 1992) (citing Chambers v. NASCO, Inc., 501 U.S. 32 ,45 (1991)); see also Sentis Group, Inc. v. Shell Oil Co., 763 F.3d 919, 923-24 (8th Cir. 2014) (upholding a district court's dismissal for spoliation of evidence where plaintiff "carried on a pattern of evasive and objectionable conduct during and after discovery," that "culminated in the loss of irreplaceable information on [an accountant's] computer"). "Prejudice, bad faith, and evidence of an effort to suppress the truth are all required to impose a sanction of dismissal based upon spoliation." Id. at n.1 (citing Menz v. New Holland N. Am., Inc., 440 F.3d 1002, 1006–07 (8th Cir.2006)).

"[T]here is a strong policy in favor of deciding a case on its merits, and against depriving a party of his day in court." Chrysler Corp. v. Carey, 186 F.3d 1016, 1020 (8th Cir. 1999). This is because "[i]n our system of justice the

opportunity to be heard is a litigant's most precious right and should be sparingly denied." Id., (citation omitted).

As the moving party, Arctic Cat bears the burden of proving its spoliation allegations. Ngo, 2006 U.S. Dist. LEXIS 65633, at *7 (citation omitted).

### B.     Whether Sabertooth Engaged in Spoliation of Evidence

Sabertooth's duty to preserve evidence arose at least as early as January 2013, when Arctic Cat filed its Complaint.  Therefore, Sabertooth was operating under a duty to preserve evidence when the alleged theft of the Old Computers occurred.

#### 1.     Intentional Destruction of Evidence

The circumstances surrounding the alleged theft invite suspicion.  As the police report noted, whoever removed the Old Computers from Daniels' home had no interest in diamonds and gold, apparently laid out in plain sight.  The responding officer observed no signs of forced entry into the home, and Sabertooth waited months to report the theft to opposing counsel.  Coupled with Arctic Cat's litany of "transgressions" allegedly committed by Sabertooth— discussed in further detail, below—this circumstantial evidence gives the Court pause.  On balance, however, the Court determines that Arctic Cat has not met

its burden to prove spoliation. Several factors weigh against drawing an inference that Sabertooth intentionally destroyed evidence.

First, this Court had already denied Arctic Cat's motion to forensically image Sabertooth's computers <u>before</u> the alleged theft of the Old Computers occurred. Assuming for the sake of argument that the Old Computers, laptop, and other devices contained damaging evidence, Sabertooth would have had little motive to destroy the damaging evidence <u>after</u> the Court had denied Arctic Cat access to them.

Secondly, Sabertooth has provided compelling testimony that it purposely rescheduled its Rule 30(b)(6) deposition in order to retrieve the Old Computers from South Carolina, and further, that it subsequently produced responsive documents from the Old Computer. Presumably, if Sabertooth truly wanted to conceal or destroy evidence, it would not have retrieved the computers in the first instance.

Finally, Sabertooth provided credible testimony regarding several unusual occurrences that allegedly took place at Daniels' and Saipe's residence, including theft of paperwork, rummaging through garbage, and "fishy" litigation-related

phone calls. This testimony raises eyebrows, and should be subject to vigorous cross-examination at trial.

In light of the above, the Court finds that Arctic Cat has not met its burden to prove spoliation based on the alleged theft of the Old Computers and other equipment.

### 2. Bad Faith and Prejudice

Because the Court finds that Arctic Cat has not met its burden in proving spoliation, it need not address whether Sabertooth acted in bad faith or whether Arctic Cat suffered prejudice. However, it is worth noting that even if the Court had granted Arctic Cat's request to forensically image Sabertooth's Old Computers before the alleged theft occurred, Arctic Cat would have difficulty persuading the Court that it was prejudiced by Sabertooth's destruction of evidence. Prior to the theft, Sabertooth had produced thousands of documents from the Old Computers and other devices, many in electronic format. Arctic Cat provides no basis for the Court to infer that the missing evidence would be different from the responsive documents already produced. Gallagher v. Magner, 619 F.3d 823, 844 (8th Cir. 2010) (affirming district court's denial of sanctions where moving party provided no basis to assume that missing evidence would be of a different character than evidence already produced).

13

### C. Other Alleged Transgressions

Arctic Cat argues that the theft of the Old Computers is one transgression amongst many committed by Sabertooth. Some of Arctic Cat's allegations cause the Court concern, especially when coupled with the alleged theft of the Old Computers and other equipment. On balance, however, the allegations do not weigh in favor of granting Arctic Cat's motion.

#### 1. Koehn Email

Some alleged transgressions stand out as more alarming than others. For example, in order to advance its trademark infringement counterclaim, Sabertooth produced evidence purporting to show actual consumer confusion between the parties' Wildcat-marked products. Specifically, it produced an email addressed to Arctic Cat from "pakoe@aol.com." The email inquired:

> Hello, I found your email address on your site. Are you also going to be making the Wildcat with V8 power like your motorcycles? I am interested in seeing more about your motorcycles and ATV's! I have seen the Wildcat V8 motorcycles before but this is the first for the ATV! Are you still producing your V8 motorcycles? I could not find anything on your site about them? Thanks for any information you can send my way!

Gary Flynn, an Arctic Cat employee, responded to the email by suggesting that its author was confusing Arctic Cat with another company, probably Polaris.

The person associated with pakoe@aol.com then forwarded the entire correspondence to Daniels' personal Sabertooth email account.

Sabertooth denied knowing the individual who uses the pakoe@aol.com email address, but Arctic Cat learned that the name of the person associated with pakoe@aol.com is Mike Koehn, who at one time helped promote Sabertooth motorcycles on his V8 forum for a fee from Sabertooth.

For his part, Daniels testified that Koehn was using an email address that he could not recognize. Nevertheless, Arctic Cat points to Koehn's relationship with Daniels as evidence that Koehn certainly knew that Sabertooth—not Arctic Cat—sold Wildcat motorcycles. This particular allegation suggests misconduct on the part of Sabertooth, dishonesty that the Court takes very seriously. However, Sabertooth has offered a credible explanation for the discrepancy, and the dispute does not warrant the sanctions requested by Arctic Cat.

### 2. EPA Certification

The majority of Arctic Cat's allegations weigh against granting its motion. For example, Arctic Cat claims that Sabertooth evaded requests to produce discovery about its efforts to obtain EPA certification. Amongst other allegations, Arctic Cat argues that Sabertooth withheld evidence regarding its intent to operate under a "display-only" exemption to EPA regulations.

This is the third occasion where Arctic Cat has brought EPA-related allegations to the Court's attention.  At the summary judgment stage, the Court determined that fact-issues remained as to whether Sabertooth complied with EPA regulations.  Although the instant motion brings to light several new details and accusations, it does not persuade the Court to grant Arctic Cat's motion for dismissal or an adverse inference.

Arctic Cat also points to several misrepresentations allegedly committed by Sabertooth, including allegations of a photoshopped image of an ATV on Sabertooth's website; false reports of manufacturing an ATV; false statements regarding Sabertooth's intent to change its company name to "Wildcat Powersports"; embellishments about its manufacturing and distribution capabilities; "stockpiling" of trademarks; and purposely mislabeled photographs of Sabertooth motorcycles at various motorcycle shows throughout the United States.

The Court is not persuaded by the remaining allegations.  Some transgressions amount to nothing more than squabbles over industry lingo.  For example, the parties dispute whether a particular business can fairly be characterized as a Sabertooth "dealer" or potential "manufacturer."  As for

allegedly mislabeled photos purporting to show Sabertooth motorcycles at disparate events, the Court determines that this issue is best preserved for cross examination at trial.

### D.   Conclusion

Because Arctic Cat has not met its burden to prove spoliation, and because neither the theft nor the alleged transgressions weigh in favor of providing the relief Arctic Cat seeks, the Court will deny Arctic Cat's motion for dismissal or an adverse inference based on Sabertooth's alleged destruction of evidence.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED:**

> Plaintiff Arctic Cat's Motion to Dismiss, or in the Alternative, for an Adverse Inference Due to Sabertooth's Spoliation of Evidence [Docket No. 199] is **DENIED.**

Dated:  September 25, 2015          s/ Michael J. Davis
                                    Michael J. Davis
                                    United States District Court