UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

ARCTIC CAT, INC.,                                    CIVIL NO. 13-146 (JRT/JSM)

       Plaintiff,

v.                                                   <u>REPORT AND RECOMMENDATION</u>

SABERTOOTH MOTOR GROUP, LLC, and
SABERTOOTH MOTORCYCLES, LLC,

       Defendants.

The above matter came before the undersigned on Defendants' Motion to Unseal Court Orders [Docket No. 281]. This motion was referred to the undersigned Magistrate Judge for a Report and Recommendation by the District Court pursuant to 28 U.S.C. §636(b)(1)(B) and Local Rule 72.1(c). Order of Reference dated May 24, 2016 [Docket No. 302].

## I.    MOTION TO UNSEAL ORDERS

Defendants (collectively, "Sabertooth") have moved the Court to unseal three orders previously entered in this case by Judge Michael Davis prior to the reassignment of the case to Chief Judge Tunheim: Order Denying Arctic Cat's Motion for Summary Judgment [Docket No. 227]; Order Denying Arctic Cat's Motion to Dismiss [Docket No. 240]; and Order Denying Arctic Cat's Motion for Summary Judgment [Docket No. 241]. Defendants' Memorandum of Law in Support of Their Motion to Unseal Court Orders ("Defs.' Mem., p. 1) [Docket No. 282].[1] Plaintiff Arctic Cat did not object to Sabertooth's request. Plaintiff's Response to Defendants' Motion to Unseal Court Orders ("Pl.'s Resp."), pp. 1-2, 4 [Docket No. 287]. Instead, it sought to hold Sabertooth to its alleged

---

[1]    The Court refers to these three Orders, collectively, as "the Orders."

"agreement to refrain from initiating contact with the media, either through a press release or any other form of communication." Id., p. 2.

Based on the agreement of the parties that the Orders can and should be unsealed, the Court recommends that they be unsealed in their entirety.

## II.   ARCTIC CAT'S REQUEST REGARDING DESSIMINATION OF THE ORDERS TO THE MEDIA

Prior to Sabertooth bringing its motion, counsel for the parties attempted to reach an agreement regarding the unsealing of the Orders.  In this regard, Arctic Cat indicated that it had no issue with the unsealing of the Orders, but it wanted to include in the stipulation a written assurance by Sabertooth that it would refrain from initiating contact with the media either through a press release or other form of communication.  Pl.'s Resp., pp. 1-2.  Arctic Cat sought this limitation because it claimed that Sabertooth had made two defamatory statements in the past in May, 2014 – one to the press and one on an internet site.  Id., pp. 1-3; Declaration of Lora M. Friedemann, dated January 18, 2016 ("Friedemann Decl."), Exs. A, B [Docket No. 288].  Arctic Cat believed that its request for restraints on Sabertooth's communications with the media would not interfere with Sabertooth's stated reasons for wanting to unseal the Orders – to show them to witnesses during trial preparation and to share them with potential business partners.  Id., ¶¶ 6, 7.  Further, Arctic Cat had agreed to Sabertooth's proposal that "[i]f Arctic Cat agrees now to stipulate to the unsealing of the orders, Sabertooth will agree to not issue any press release about the orders, and to not disseminate the orders to the media."[2]  Id., Ex. E.  However, as negotiations continued, Arctic Cat concluded that

---

[2]   In the same communication, Sabertooth informed Arctic Cat that if Sabertooth had to file a motion to unseal the Orders, it would not agree to such limitations. Friedemann Decl., Ex. E.

Sabertooth's agreement "was an empty promise."  Pl.'s Resp., p. 4.  While Sabertooth promised not to issue a press release and not to send copies of the Orders to the press, "it refused any limitations on its ability to initiate contact with the media through any other means."  Id. (citing Declaration of Daniel J. Ringquist, Ex. B [Docket No. 283]). Arctic Cat maintained that reasonable limitations should be put in place to prevent "Sabertooth from directly or indirectly contacting the media to solicit coverage of the Orders," and proposed language to that effect.  Id., pp. 4-5.  Arctic Cat asked the Court hold Sabertooth to the promise it made and prevent Sabertooth from initiating contact with the media through a press release or through any other form of communication. Id., p. 5.

In support of its motion to unseal the Orders, Sabertooth had argued that under common law and the First Amendment, there was no basis for continuing to seal the Orders.  Defs.' Mem., pp. 3-5.  In its reply, Sabertooth also maintained that any restrictions on its communications about or dissemination of the unsealed Orders was unwarranted and unsupported under common law and the First Amendment. Defendants' Reply in Support of Their Motion to Unseal Court Orders ("Defs.' Reply"), p. 2 [Docket No. 292].  In support, Sabertooth denied that it had made defamatory statements about Arctic Cat in the press.  Id., pp. 2-3.

For starters, any suggestion by Arctic Cat that a binding agreement was reached between it and Sabertooth regarding the use and dissemination of the Orders is rejected.  As is clear by the submissions by both parties, negotiations regarding the use and distribution of the Orders fell apart and no agreement was ever reached.

Second, while Arctic Cat never brought a motion for a protective order, nor stylized its response as seeking a protective order, it is evident that is the gist of what it

is seeking.  Rule 26 provides, in relevant part, that courts may, for good cause "issue [a protective] order to protect a party from annoyance, embarrassment, oppression, or undue burden or expense, including. . . that a trade secret or other confidential research, development, or commercial information may not be revealed or be revealed only in a specified way . . ."  Fed. R. Civ. P. 26(c)(1)(G).  A party seeking protection under Rule 26(c) must provide specific facts demonstrating that protection of information is necessary, as opposed to "stereotyped and conclusory statements." Gulf Oil Co. v. Bernard, 452 U.S. 89, 102 n. 16 (1981) (citations omitted); see also Baxter Intern., Inc. v. Abbott Laboratories, 297 F.3d 544, 546 (7th Cir. 2002) ("[T]he parties' joint motion made no effort to justify the claim of secrecy.  It was simply asserted, mostly on the basis of the agreement but partly on the ground that these are commercial documents.  That won't do.") (citation omitted); Arvco Container Corp. v. Weyerhaeuser Co., Civ. No. 1:08–548, 2009 WL 311125, at *8 (W.D. Mich. Feb. 9, 2009) ("[V]ague and conclusory allegations of confidentiality and competitive harm are insufficient.  The movant must make a particularized showing that the information sought is confidential and come forward with 'specific examples' of competitive harm.") (internal quotation mark and citations omitted).

There is a common law right of access to judicial records.  Webster Groves Sch. Dist. v. Pulitzer Pub. Co., 898 F.2d 1371, 1376 (1990) (citing Nixon v. Warner Commc'ns, 435 U.S. 589, 597 (1978)).  "This right of access bolsters public confidence in the judicial system by allowing citizens to evaluate the reasonableness and fairness of judicial proceedings and to keep a watchful eye on the workings of public agencies." IDT Corp. v. eBay, 709 F.3d 1220, 1222 (8th Cir. 2013) (internal quotation mark and citations omitted).  "It also provides a measure of accountability to the public at large,

which pays for the courts." Id.  However, this right of public access is not absolute, and courts retain supervision over their own records, with the power to weigh the parties' competing interests in deciding what records should be unsealed.  Id.  As the Supreme Court explained:

> Every court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes. For example, the common-law right of inspection has bowed before the power of a court to insure that its records are not used to gratify private spite or promote public scandal through the publication of the painful and sometimes disgusting details of a divorce case.  Similarly, courts have refused to permit their files to serve as reservoirs of libelous statements for press consumption, or as sources of business information that might harm a litigant's competitive standing.

Nixon, 435 U.S. at 598 (internal quotation marks and citations omitted).

The First Amendment also provides grounds for access to judicial orders.  "It is well settled that the public and press have a qualified right of access to judicial documents and records filed in civil and criminal proceedings, [and] this right of public access springs from the First Amendment and the common-law tradition that court proceedings are presumptively open to public scrutiny."  Doe v. Pub. Citizen, 749 F.3d 246, 265 (4th Cir. 2014) (citing Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 580 n. 17, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980); Nixon v. Warner Communications, Inc., 435 U.S. 589, 597, 98 S.Ct. 1306, 55 L.Ed.2d 570 (1978); Media Gen. Operations, Inc. v. Buchanan, 417 F.3d 424, 428 (4th Cir.2005)).

"A party seeking to maintain the confidentiality of documents such as those at issue here must overcome a presumption that favors public access."  Schedin v. Ortho-McNeil-Janssen Pharm., Inc., No. CIV. 08-5743, 2011 WL 1831597, at *1 (D. Minn. May 12, 2011) (quoting United States v. McDougal, 103 F.3d 651, 656 (8th Cir.1996)).

> The presumption for public access to court documents is "especially strong" as it relates to judicial opinions. <u>Exxon Mobile Corp.</u>, 570 F.Supp.2d at 51 (internal quotation marks omitted). Indeed, "[a] court's ... orders[ ] are the quintessential business of the public's institutions." <u>E.E.O.C. v. Nat. Children's Ctr., Inc.</u>, 98 F.3d 1406, 1409 (D.C.Cir.1996). The Supreme Court has noted that "[j]udicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants...." <u>U .S. Bancorp Mortg. Co. v. Bonner Mall P'ship</u>, 513 U.S. 18, 27 (1994) (internal quotation mark omitted). As a result, even in the case of redaction, courts presume disclosure rather than confidentiality. <u>Pepsico, Inc. v. Redmond</u>, 46 F.3d 29, 30 (7th Cir.1995).

<u>Schedin</u>, 2011 WL 1831597, at *4.

In support of its request that this Court limit Sabertooth's contacts with the press about the Orders, Arctic Cat presented two communications made by Sabertooth in May of 2014 – one to the press and one on an internet site – regarding Sabertooth's view of Arctic Cat's suit against it.   Friedemann Decl., Exs. A, B.   While Arctic Cat may take umbrage with Sabertooth's characterizations of the suit in these communications, neither come close to overcoming the presumption of public access to these Orders afforded by common law and the First Amendment.

For all of these reasons, Arctic Cat's request that the Court place limits on Sabertooth's contacts with the press regarding the Orders should be denied.

## III.   SEALING OF BRIEFS, DECLARATIONS, EXHIBITS

As part of its response to Sabertooth's motion, Arctic Cat requested that the Court unseal all of the briefs, declarations, and exhibits filed in connection with the motions decided in the Orders, claiming that there was nothing confidential in the Orders or the materials that the parties had submitted and Arctic Cat's attorneys have been prevented from sharing information with their client due to Sabertooth's over-

designation of documents.  Pl.'s Resp., pp. 2, 5-6 (citing Docket Nos. 65, 66, 76, 77, 79, 116, 117, 202, 209, 210, 224 and 225).

In reply, Sabertooth objected to unsealing all underlying affidavits and exhibits.  Defs.' Reply.  At the same time, Sabertooth consented to unsealing the memoranda of law and affidavits, with certain redactions, and de-designating many of the underlying exhibits.  Id., pp. 1-4.  However, it maintained that certain exhibits should remain under seal pursuant to the Protective Order – i.e., those containing confidential business information regarding the identity of customers, dealers, and financial information.  Id., pp. 3-4 (citing Docket No. 66, Exs. 2, 13, 14; Docket No. 77, Exs. 10, 16, 23, 25-27; Docket No. 117, Exs. F, J; Docket No. 202, Exs. 3, 7, 12-14; Docket No. 210, Exs. 1-3, 15, 20-22, 25, 32, and 35).

On April 27, 2016, Chief Judge Tunheim heard Plaintiff's Motion to Exclude Expert Testimony of Demetri Melekos [Docket No. 245], Plaintiff's Motion to Exclude Expert Testimony of Melissa Snelson [Docket No. 248], and Plaintiff's Motion to Bifurcate Trial and Strike Jury Demand [Docket No. 264], along with Defendant's Motion to Unseal Pleading [Docket No. 281].  At the hearing, Chief Judge Tunheim requested that the parties review all documents filed under seal in this case and identify those documents they sought to maintain under seal.  Both parties complied.  See Docket Nos. 300, 301.

Based on the submissions of the parties, the Court has determined that the following actions shall be taken by parties with respect to pleadings currently under seal:

- Docket No. 65 – unseal the pleading

- Docket No. 66 – unseal all exhibits except Exhibits 2, 13, 14

- Docket No. 76 – unseal

- Docket No. 77 – unseal all exhibits except Exhibits 10, 16, 23, 25-27

- Docket No. 116 – unseal

- Docket No. 117 – unseal all exhibits except Exhibits F, J

- Docket No. 202 – unseal all exhibits except Exhibit 12

- Docket No. 209 -- unseal

- Docket No. 210 – unseal all exhibits except Exhibits 2, 3, 12, 15

- Docket No. 224 – unseal

- Docket No. 225 – unseal all exhibits except Exhibits 20, 25, 28, 30.

- Docket No. 251 – unseal all exhibits except Exhibits A, E

- Docket No. 267 – unseal all exhibits except Exhibit A.

- As for any other legal memoranda or affidavits filed by any party in support or opposition of the motions giving rise to the Orders, any party seeking to redact any portion of memorandum of law or affidavit, shall be submit to the undersigned, following consultation with the opposition party to determine if they concur or oppose the proposed redaction, any proposed redactions for each pleading.  All redactions shall be shown in the body of the pleading with yellow highlighting, and shall be accompanied by a short explanation as to why the material should be redacted, and if the opposing party objected to the redaction, the basis for the objection.

## IV.   RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED THAT:

1.     Defendants' Motion to Unseal Court Orders [Docket No. 281] be GRANTED and Docket Nos. 227, 240 and 241 should be unsealed.

2.     Plaintiff's Request for Limitations on Dissemination of the Orders to the Media be DENIED.

3.     Ten days following the District Court's action on this Report and Recommendation, the parties take the actions set forth in Section III of this decision.

Dated:        August 1, 2016

*s/ Janie S. Mayeron*
JANIE S. MAYERON
United States Magistrate Judge

## NOTICE

**Filing Objections:**  This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections.  LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:**  This Report and Recommendation will be considered under advisement 14 days from the date of its filing.  If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.